Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8406 | **DATE** | 3/31/2003 |
| **CASE TITLE** | Clive T. Miller vs. Apropos Technology, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motions to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the Motions to Dismiss filed by the Apropos Defendants [Doc. 43], Defendant Michael J. Profita [Doc. 45], and the Underwriter Defendants [Doc. 47] are each granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | MAR 31 2003 | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | 33 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docket deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| jar/lc | courtroom deputy's initials | 03 MAR 31 PM 1:47 Date/time received in central Clerk's Office | mailed notice | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLIVE T. MILLER, on behalf of himself and all others similarly situated, )<br>)<br>Lead Plaintiff, )<br>)<br>v. )<br>)<br>APROPOS TECHNOLOGY, INC., et al. )<br>)<br>)<br>Defendants. ) | No. 01 C 8406<br><br>HONORABLE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

This is a lawsuit arising under the Securities Act of 1933 and the Securities Exchange Act of 1934. Plaintiff Clive T. Miller represents a putative class of plaintiffs who purchased common stock in Defendant Apropos Technology on the open market during the period from February 17, 2000 through April 10, 2001 ("the class period"). The complaint alleges violations of Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77o, and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a). Plaintiffs named as Defendants Apropos Technology, several of Apropos' corporate officers, and several corporations who served as underwriters for the initial public offering of stock. Currently pending and fully briefed are three Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6); one each from Defendant Michael J. Profita, the Apropos Technology Defendants, and the underwriter Defendants.

**Factual and Procedural Background**

Defendant Apropos Technology, Inc. ("Apropos") is a corporation that develops,
DOCKETED
MAR 3 1 2003

markets, and supports technology driven customer interaction management solutions for multimedia contact centers.[1] (Pl. Comp., ¶ 3) Translated roughly into plain English, Apropos builds software systems for companies that handle a high volume of customer inquiries. Apropos' software is adaptable to specific business needs, and it can accommodate the transfer and routing of customer inquiries that arrive via telephone, email, and/or the internet. Apropos began developing this product in January 1989 and the first product was shipped in March 1995. (Apropos Defs.' Mem. Supp. Mot. Dismiss, Ex. A ("Prospectus"), at 4.)

In 1999, Plaintiffs allege that there was a power struggle taking place between Apropos' CEO Kevin G. Kerns, and two other corporate officers: Chief Technology Officer Patrick K. Brady, and Vice-President for Technology William M. Bach. (Pl. Comp., ¶ 5.) Brady was a co-founder of the corporation; he and Bach were the Company's "most senior technology officers." (Pl. Comp., ¶ 4; Pl. Comp., ¶ 56–57.) At the Apropos Board meeting preceding the initial public offering, in July 1999, this struggle came to a head. Kerns emerged with the support of the majority of the Board.

After the Board Meeting, Brady left Apropos and did not return. (Pl. Comp., ¶ 58.) On September 21, 1999, Kerns sent an e-mail to others at Apropos explaining that Brady was on sabbatical for the next six months. (Pl. Comp., Ex. A.) Bach, meanwhile, was assigned to a more limited role with the corporation, a move which Plaintiffs believe was calculated to force his resignation. (Pl. Comp., ¶59.) In short, when Brady and Bach lost the power struggle, they were de facto ousted from the corporation. (Pl. Comp., ¶¶ 5–6.)

---

[1] This recitation of facts comes primarily from Plaintiff's Complaint. The Court assumes that all of the well-pleaded allegations of the Complaint are true for the purposes of a Motion to Dismiss under Rule 12(b)(6).

Meanwhile, Apropos Technologies was preparing for its initial public offering of stock. Apropos prepared a registration statement to authorize the sale of stock pursuant to 15 U.S.C. § 77f. Federal law regulates the contents of registration statements for the sale of Securities. See 15 U.S.C. §§ 77g, 77aa. Apropos also prepared a prospectus offering the securities for sale. This, too, would have to conform to the requirements of federal law. See 15 U.S.C. § 77j. In advance of the initial public offering (IPO), Apropos contracted with several financial organizations to serve as underwriters of the IPO.

On February 17, 2000, Apropos held an initial public offering of shares of common stock, trading on the NASDAQ under symbol APRS. From the perspective of Apropos, the IPO was a success. The corporation sold almost 4 million shares of common stock, which generated 79.3 million dollars of net proceeds. (Pl. Comp., ¶ 3.) The price of the stock rose quickly from the initial offering at twenty-two dollars to a high of seventy dollars per share. (Pl. Comp. ¶ 76.)

From the perspective of Plaintiffs, however, the IPO was a failure. After its initial price increase, the stock flopped. By the end of the class period, the stock was trading at $2.98 per share. (Pl. Comp. ¶ 76.) Faced with devastating losses, Plaintiffs believe they were hoodwinked into buying the stock by certain material misrepresentations in the prospectus. Putative class representative Clive T. Miller filed the consolidated amended class action complaint on April 17, 2002. The complaint alleges that the registration statement and prospectus contained material misrepresentations and omissions. Specifically, Plaintiff alleges that the registration statement omitted material information relating to Brady's and Bach's diminished roles within the company. (Pl. Comp. ¶¶ 57, 62–68.) Plaintiff also claims that the registration statement contained false or misleading statements regarding the intended use of the proceeds from the

3

initial public offering. (Pl. Comp., ¶¶ 69–75.) Defendants' motions to dismiss followed.

**DISCUSSION**

Plaintiff's complaint contains four counts. Count I alleges that all the Defendants (Apropos Technologies, Apropos' officers, and the underwriters of the IPO)[2] violated Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, through material misrepresentations about three things: (1) the changed role of William Bach; (2) the changed role of Patrick Brady; and (3) the intended use of proceeds from the IPO. Count II alleges that Defendant Kerns, as a control person at Apropos, is jointly and severally liable for any violations of Section 11 of the Securities Act of 1933 by persons under his control pursuant to Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o. Count III alleges that Defendants Brady and Kerns violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), through their knowing misrepresentation in the registration statement about Brady's and Bach's roles in the corporation. Count IV alleges that Defendant Kerns, as a control person at Apropos, is jointly and severally liable for any violations of Section 10(b) of the 1934 Act by persons under his control pursuant to Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).

The Apropos Defendants, which include the corporation and six of the seven individuals who signed the registration statement, moved to dismiss all four counts of the complaint. Defendant Michael J. Profita, the seventh individual who signed the registration statement, joined in the arguments pertinent to Count I of the Apropos Defendants' Motion to Dismiss and also separately moved to dismiss Count I of the complaint. The Underwriter Defendants also

---

[2]Named as Defendants are: the corporation, seven individuals who signed the registration statement, and nineteen underwriters of the initial public offering. For a list of all the Defendants and their roles, see Pl. Comp. at ¶¶ 17–47.

4

joined in the Apropos Defendants' Motion to Dismiss to the extent it was pertinent to Count I, and filed their own Motion to Dismiss.

The Court will analyze the Motions to Dismiss the Complaint count by count.

**Legal Standard**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. In evaluating the motion, the Court accepts as true all facts and allegations in the complaint and makes all reasonable inferences in the plaintiff's favor. See Stransky v. Cummins Engine Co., Inc., 51 F.3d 1329, 1330 (7th Cir. 1995). Complaints should only be dismissed if it is clear that no set of facts in support of the claim would entitle the plaintiff to relief. See Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69. 73 (1984)).

Ordinarily, the only document the Court relies upon in deciding a motion to dimiss is the Plaintiff's Complaint. Where the complaint alleges violations of federal securities laws, however, several circuits have held that the district court may also consider documents that are integral to Plaintiff's claims, such as the Registration Statement and Prospectus. See San Leandro Emergency Medical Group Profit Sharing Plan v. Phillip Morris Cos., 75 F.3d 801, 809 (2d Cir. 1996); Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1018 (5th Cir. 1996); Bovee v. Coopers & Lybrand, CPA, 272 F.3d 356, 360–61 (6th Cir. 2001); Ehlert v. Singer, 245 F.3d 1313, 1317 n.4 (11th Cir. 2001).[3] Although the Seventh Circuit has not spoken to this issue in

---

[3]Although they all reach the same conclusion, the circuits have taken two approaches to the use of documents integral to a securities complaint on a motion to dismiss. The majority approach, exemplified by the Second Circuit (where most securities litigation occurs), holds that district courts can consider SEC filings because securities complaints incorporate those filings by reference. See San Leandro, 75 F.3d at 808–09; Goldman v. Belden, 754 F.2d 1059, 1065–66

the context of securities litigation, it has held that on a motion to dismiss the district court may rely upon documents outside of the complaint provided that those documents are integral to the complaint. See Wright v. Associated Ins. Co., 29 F.3d 1244, 1248 (7th Cir. 1994); Venture Associates Corp. v. Zenith Data Systems, Inc., 987 F.2d 429, 431 (7th Cir. 1993). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." Venture Associates Corp., 987 F.2d at 431 (citing cases). In this case, although it was the Defendant that submitted the Prospectus, this Court finds it is central to Plaintiff's complaint and therefore can be considered on a Motion to Dismiss.

Count III of Plaintiff's Complaint asserts a violation of Section 10(b) of the Securities Exchange Act. This portion of the Complaint implicates the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. Pro. 9(b). When the Court addresses that count below, it will address the heightened pleading requirements of Rule 9(b).

**COUNT I: Violation of Section 11 of the Securities Act of 1933**

In Count I, Plaintiffs allege that Apropos made false statements or material misrepresentations in its Securities Registration Statement. Liability for making false statements

---

(2d Cir. 1985); see also Credit Suisse First Boston Corp. v. Arm Financial Group, Inc., No. 99 CIV 12046 WHP, 2001 WL 300733, at *3 (S.D.N.Y. March 28, 2001). The minority approach, only employed in the Fifth Circuit, allows the district court to take judicial notice of statements required to be filed and actually filed with the Securities and Exchange Commission (SEC) on a motion to dismiss a securities fraud complaint. See Lovelace, 78 F.3d at 1018; see also In re Azurix Corp. Securities Litigation, 198 F. Supp. 2d 862, 877 (S.D. Tex. 2002).

or material misrepresentations in a Securities registration statement extends quite broadly. The statute reads, in pertinent part:

> In case any part of the registration statement . . . contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person who acquires such security . . . may . . . sue (1) every person who signed the registration statement; (2) every person who was a director of . . . the issuer at the time of the filing . . . of the registration statement; . . .(5) every underwriter with respect to such security.

15 U.S.C. § 77k(a). Count I of Plaintiff's Complaint is pleaded against seven people who signed the registration statement, six of whom were directors of Apropos at the time, and nineteen corporate underwriters of the initial public offering.

To state a claim under section 11 of the Securities Act, plaintiffs must allege that defendants made untrue statements of material fact or omitted material facts in a registration statement or prospectus. See, e.g., Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 (8th Cir. 1997). A material omission from the registration statement or prospectus is actionable if the omitted facts were necessary to make the disclosures therein not misleading. See In re N2K Securities Litigation, 82 F. Supp. 2d 204, 207 (S.D. N.Y. 2000), aff'd 202 F.3d 81 (2d Cir. 2000) (per curiam).

The Section 11 claim in this case has three components: (1) the changed role of William Bach; (2) the changed role of Patrick Brady; and (3) the intended use of the proceeds from the IPO. The Court addresses each separately below.

### 1. Changed Role of William Bach

Plaintiffs allege that Bach's position within the corporation changed substantially prior to the IPO. According to the Complaint, Bach's role as Vice President for Technology had been

substantially reconfigured to diminish his impact on the corporation and inspire him to resign. Plaintiffs' contention that the omission of this information about Bach was a material misrepresentation is readily dismissed. The Apropos Defendants rightly point out that the "diminished" duties Plaintiff's Complaint ascribes to Bach are entirely consistent with the description of his duties as Vice President for Technology.[4] If the Court were to accept Plaintiff's position as regards Bach, corporations would either be paralyzed from making internal changes to the duties of their corporate officers or required to disclose any and all internal changes of executive duties. Neither result is desirable or required under federal securities laws and regulations.

Corporations are given a relatively free hand to determine their organizational structure and the allocation of duties within that structure. A disclosure requirement for changes like those Plaintiff alleges Bach experienced at Apropos would accomplish little besides making it more difficult to determine which, if any, disclosures in securities filings are material. Accepting the allegations in Plaintiff's Complaint regarding Bach as true, the Court finds that the Prospectus did not contain a material misrepresentation about the role of William Bach in the corporation at the time of the IPO.

### 2. Changed Role of Patrick Brady

The allegations regarding Patrick K. Brady, however, require closer scrutiny. Both parties agree that at the time of the IPO, Patrick K. Brady, the Chief Technology Officer and co-

---

[4]Defendants assert that Bach continues to be an employee of Apropos, and that he experienced a promotion to Senior Vice President for Technology in 2000. (Apropos Def. Mem. L. Supp. Mot. Dismiss, at 19 n.5). Although the Court makes no findings of fact on a motion to dismiss, if true, this further undermines the Complaint's untenable position regarding Mr. Bach.

8

founder of Apropos, was on a leave of absence from the corporation. Plaintiffs assert that at least Kevin Kerns, the CEO of Apropos, and Patrick Brady both knew that Brady would not be coming back to the corporation.[5] The Prospectus makes no mention of any dispute between Brady and Kerns, nor does it discuss that Brady may not return to the corporation.

The central thrust of the Apropos' Defendants reply is that "when the Prospectus is read as a whole, no reasonable person could have attached any importance to the possible future role of . . . Brady at Apropos." (Apropos Def. Rep. Mem. L. Supp. Mot. Dismiss, at 6.) The prospectus as a whole certainly permits an inference that the key personnel in general and Brady in particular had a future role at Apropos. For example, it reads: "We depend on the continued services of our executive officers and other key personnel. The loss of services of any of our executive officers or key personnel could have a material adverse effect on our business, financial condition and results of operations." (Prospectus at 8.) Elsewhere, the Prospectus reads: "Our future performance depends in significant part upon the continued service of our key technical, sales and marketing, and senior management personnel. **The loss of the services of one or more of our key employees would harm our business.**" (Prospectus at 37.) (emphasis added) Apropos highlights this language as warning investors that "retention of personnel was a risk factor." (Apropos Def. Mem. L. Supp. Mot. Dismiss, at 12.) Again, Plaintiff's position is that Apropos was aware that the risk regarding Brady had already been realized at the time of the IPO.

As regards Brady particularly, there can be no doubt that he was both an executive officer

---

[5]Their knowledge supports Counts III and IV of the Complaint, and will be discussed along with those Counts, infra.

and one of the key employees at Apropos. The Prospectus indicates that he was one of four members of Apropos' Executive Committee, which "has the authority of the Board of Directors to manage our business...." (Prospectus at 42.) The Prospectus contains conflicting statements about Brady's term as a Director of Apropos. At one point, it indicates that Brady's term as a Director was due to end in 2002, two years after the IPO. (Prospectus at 41) Elsewhere, it indicates that Brady "is entitled to be one of our directors until the expiration of his employment agreement [on March 19, 2000]." Whether his term as Director expired in 2000 or 2002, the Prospectus definitely establishes Brady as one of the four most central figures in the corporation. Plaintiff's Complaint alleges that the Prospectus failed to mention that Brady was already effectively out of the company at the time of the IPO.

Apropos' strongest argument in support of the failure to disclose Brady's pending departure from the corporation is that the Prospectus indicates that Brady's employment contract was due to expire on March 19, 2000. (Prospectus at 44.) From that, Apropos argues that no investor could reasonably expect Brady to remain with the corporation after the expiration of his employment agreement. Here, Apropos seeks to defend itself from the charge that its Prospectus was misleading with an assertion that it was factually accurate. Even if the Prospectus is factually accurate, that does not mean that it cannot be materially misleading as a matter of law. Disclosure of the expiration date of an employment agreement is not equivalent to disclosure that an executive officer and co-founder of the corporation is going to leave the corporation when the contract expires. If proven, the failure to disclose this information in the Prospectus would render it materially misleading. The factual truth of the information regarding Brady does not alter its misleading nature.

The presence of cautionary language about retention of key personnel similarly does not render the omission of information about Brady acceptable under Section 11. A statement that "we can give no assurance that we can retain or attract key personnel in the future" (Prospectus at 37) does not justify the omission of information regarding Brady's departure from the Prospectus. As regards Patrick Brady, Count I of Plaintiff's Complaint states a claim under Section 11 of the Securities Act of 1933.

3. **Intended Use of Proceeds**

Plaintiffs assert that the Prospectus contained material misrepresentations regarding the intended use of proceeds from the IPO. The Prospectus indicated that it anticipated net proceeds of either $74.2 million or $79.9 million, with the latter figure depending on whether the underwriters "exercise[d] their overallotment option in full." (Prospectus at 14.) Of those proceeds, the Prospectus indicated that "$8.0 million of the net proceeds will be used to repay debt," with the debt repayment plan described in some detail. Beyond the $8 million dedicated to debt repayment, the Prospectus contains some estimates regarding the use of the net proceeds from the IPO. Plaintiffs allege that Apropos did not adhere to the estimates given in the Prospectus regarding the Use of Proceeds.

Securities law requires that statements in Prospectus to be true and not misleading at the time they are made. 15 U.S.C. § 77k; see also Glassman v. Computervision Corp., 90 F.3d 617, 627 (1st Cir. 1996) ("[S]tatements in the Prospectus . . . are required by law to be true *as of the effective date of the offering.*"). Plaintiff's Complaint alleges that a little over one year after the effective date of the IPO "the Company still had unspent proceeds of the Offering invested in cash and short term investments totaling over $60 million, rather than in pursuit of the

11

Company's strategic goals". (Comp. ¶ 75.)

Defendant correctly responds that the Prospectus did not contain a timetable for spending the proceeds from the IPO. Furthermore, the Prospectus indicates, "Pending any use, the net proceeds of this offering will be invested in short-term, interest bearing investment grade securities." (Prospectus at 14.). This is exactly how Plaintiff's Complaint alleges the proceeds were being used. Plaintiff's complaint regarding the use of proceeds is dismissed. Even accepting the allegations in the Complaint, Apropos is using the proceeds in keeping with the intended use described in the Prospectus.

Furthermore, the statements in the Prospectus about the intended use of proceeds are immediately proceeded by cautionary language about "forward-looking statements" and immediately followed by cautionary language about potential changes in the use of proceeds. (Prospectus at 13–14.) The "bespeaks caution" doctrine provides that forward-looking statements may not be misleading where they are accompanied by meaningful warnings and cautionary statements. See Harden v. Raffensperger, Hughes & Co., 65 F.3d 1392, 1404 (7th Cir. 1995) (quoting 3B Harold S. Bloomenthal, Securities and Federal Corporate Law § 8.26 [1] at 8-110 (1995)). Even if Apropos were not using the proceeds in accord with the estimates in the Prospectus, the estimates are sandwiched between such meaningful cautionary language that they can not be misleading as a matter of law.

## COUNT II: DEFENDANT KERNS' LIABILITY AS A CONTROL PERSON UNDER SECTION 15 OF THE SECURITIES ACT OF 1933

Section 15 of the Securities Act of 1933 makes "every person who . . . controls any person liable under section 77k [, that is, Section 11 of the Securities Act of 1933] . . . jointly and

severally [liable] with and to the same extent as such controlled person . . . unless the controlling person had no knowledge of or reasonable ground to believe" that the facts supporting liability under Section 11 exist. 15 U.S.C. § 77o. In this case, Plaintiff's Complaint states a claim for a violation of Section 15 against Defendant Kerns. The requirements for claims under Section 15 are largely co-extensive with the requirements for Section 11 claims. The only additional element that Section 15 would require is that the Defendant was in a position of control over the alleged violators of Section 11. Here, the allegation that Defendant Kerns was CEO of Apropos at the time of the IPO is sufficient to make out the additional element.

As described above, Plaintiff's Complaint states a claim under Section 11 of the Securities Act of 1933 only for the failure to disclose information relating to Patrick Brady's departure from the corporation. The allegations relating to William Bach and to the use of proceeds do not support a finding that the Prospectus was materially misleading in violation of Section 11. As such, Kerns could be jointly and severally liable under Section 15 only to the extent that the Count I Defendants are liable for the Section 11 violation.

## COUNT III: DEFENDANTS KERNS AND BRADY'S VIOLATIONS OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934

Section 10(b) of the Securities Exchange Act of 1934 imposes private civil liability on those who commit a manipulative or deceptive act in connection with the purchase or sale of a security. See 15 U.S.C. § 78j(b); Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 166 (1994). As mentioned earlier, violations of Section 10(b) of the Securities Exchange Act implicate the heightened pleading requirements of Rule 9. "With respect to securities fraud cases, Rule 9(b) requires that . . . 'the complaint ... must afford a basis

for believing that plaintiffs could prove scienter.' DiLeo v. Ernst & Young, 901 F.2d 624, 629 (7th Cir.1990)." In re HealthCare Compare Corp. Securities Litigation, 75 F.3d 276, 281 (7th Cir. 1996).

Plaintiffs' allegations in Count III are only stated against Defendants Kerns and Brady. Plaintiffs' complaint alleges with particularity the elements of this violation of Section 10(b). Plaintiffs' position is that Kerns "effectively pushed Brady out of the company" (Comp. ¶ 5.) and that Kerns and Brady conspired to keep his ouster secret until after the IPO. In support of their position, they attached to the complaint an email from Kerns to the company regarding Brady's leave of absence dated September 21, 1999. (Pl. Comp. Ex. A) This email indicated that Brady would be taking a six-month leave of absence from the corporation. Since his employment agreement terminated on March 19, 2000, this leave of absence would cover his absence for the final six months of his contract.

Defendants assert that this e-mail reflects Brady's "continued technical leadership of the company." (Apropos Def. Mem. L. Supp. Mot. Dismiss, at 14.) While Defendants are certainly free to pursue this imminently plausible theory as this litigation proceeds, the e-mail could just as readily be interpreted as evidence of Kerns' and Brady's efforts to prevent his departure from Apropos from becoming public prior to the IPO. On a Motion to Dismiss, where the Court makes reasonable inferences in the Plaintiff's favor, the latter interpretation must be attributed to the e-mail. The Complaint provides sufficient allegations to support Plaintiff's allegations of scienter as against Brady and Kerns.

As with Count I, Count III of the Complaint also attempts to state a claim regarding William Bach. The analysis relating to Bach's role under Count I pertains equally well to Count

14

III. Even if Plaintiff's allegations regarding Bach are true, his alleged changed role with the Defendant is not sufficiently material to sustain liability under Section 10(b).

Defendants rely to various degrees on the absence of loss causation in support of their motions to dismiss. All parties properly agree that "[section] 11... does not require a plaintiff to plead loss causation in the complaint." Apropos Def. Mot. Dismiss at 6; accord Profita Mot. Dismiss at 3 ("loss causation is not an element of a § 11 claim"). See 15 U.S.C. § 77k(e). Counts I and II, therefore, will not be dismissed for failure to allege loss causation.[6]

Loss causation is a required element of Section 10(b) claims, though. The Apropos Defendants contend that the Seventh Circuit decision in Bastian v. Petren Res. Corp., 892 F.2d 680 (7th Cir. 1990), provides controlling precedent that requires their Motion to Dismiss to be granted. This suggestion is unavailing. In Bastian, the Seventh Circuit affirmed dismissal of an SEC Rule 10(b)(5) violation because the Plaintiffs failed to allege "the cause of the transaction's turning out to be a losing one." Id., 892 F.2d at 684. In this case, Plaintiffs do make allegations that support the element of loss causation. Plaintiffs allege that the failure to disclose the alleged truth about Brady's pending absence from the company "caused the offering price of Apropos common stock on the [date of the] Offering to be higher than the offering price would have been had the true facts regarding the status and role[] of Defendant Brady . . . been disclosed to the investing public." (Comp. ¶ 117). While this does not explain precisely why the stock

---

[6]Defendants request the Court to dismiss the Complaint on loss causation grounds because the absence of loss causation is apparent from the face of Plaintiff's Complaint. While affirmative defenses such as the absence of loss causation can be grounds for dismissal under Rule 12(b)(6), see Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)§, the Court does not find that the affirmative defense is sufficiently proved from the face of Plaintiff's Complaint to merit dismissal.

15

eventually fell in value, it does support the charge that the Defendants' fraud caused damages to Plaintiffs who purchased common stock in the IPO at the inflated price.

Defendants point to the general decline in value of stocks, particularly internet stocks, since the IPO in February 2000 in support of their position that Plaintiffs cannot prove loss causation. While it is clear that the stock market has declined over the past few years, on a motion to dismiss, this Court is not prepared to hold as a matter of law that the Plaintiffs could not prove causation of damages. Plaintiffs may have a difficult road ahead in proving loss causation, but they allege the element in their Complaint, which is all they must do at this stage.

## COUNT IV: DEFENDANT KERNS' LIABILITY AS A CONTROL PERSON UNDER SECTION 20(a) OF THE SECURITIES EXCHANGE ACT

As with Section 15 of the Securities Act of 1933, Section 20(a) of the Securities Exchange Act creates joint and several liability in a control person for violations of Section 10(b) of the Exchange Act by persons within the control person's control. See 15 U.S.C. §78t(a). The only additional element of a Section 20(a) violation is that the Defendant be in control of the alleged violators of Section 10(b). Defendant Kerns, as CEO of Apropos, would be a control person vis-a-vis Defendant Brady at the time of the IPO. Consequently, the Complaint states a claim against Defendant kerns for a violation of Section 20(a) of the Securities Exchange Act of 1934.

## CONCLUSION

Counts I and II of Plaintiff's Complaint state claims for violations of Sections 11 and 15 of the Securities Act of 1933 for the failure to disclose that Patrick K. Brady was leaving Apropos in the prospectus and registration statement. Counts III and IV of Plaintiff's Complaint

state claims for violations of Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934. Consequently, the Motions to Dismiss Count I (Defendant Michael J. Profita's Motion, the Underwriter Defendants' Motion, and Apropos Defendants' Motion) are granted as they relate to the role of William Bach and the intended use of proceeds, and denied as they relate to the role of Patrick Brady. The Apropos Defendants Motion to Dismiss Counts II, III, and IV is granted as they relate to the role of William Bach and (as to Count II) the intended use of proceeds, and denied as they relate to the changed role of Patrick Brady.

**Enter:**

_____
**David H. Coar**
**United States District Judge**

**Dated: March 31, 2003**